William S. Gray & Company v. Commissioner.
William S. Gray & Co. v. Commissioner
Docket No. 15501.
United States Tax Court
1950 Tax Ct. Memo LEXIS 235; 9 T.C.M. (CCH) 267; T.C.M. (RIA) 50079; March 29, 1950
*235 Equity invested capital. - Held, that petitioner has not established that the good will of its predecessor proprietorship had any fair market value at the time petitioner acquired the predecessor's business for its stock in December 1904, and respondent properly excluded such claimed good will in computing petitioner's equity invested capital under section 718, I.R.C.
J. Marvin Haynes, Esq., Investment Bldg., Washington, D.C., and Philip Bardes, Esq., for the petitioner. Harold D. Thomas, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion TYSON, Judge: The respondent has determined a deficiency in petitioner's excess profits tax in the amount of $11,022.64, for the calendar year 1941. Petitioner assigns error in respondent's elimination of an amount claimed as good will in computation of petitioner's equity invested capital. Further adjustments made by respondent to petitioner's income and excess profits tax liability are not in controversy. Petitioner claims a refund of excess profits tax in the amount of $77,350.04 for the above year. The proceeding was submitted upon a stipulation of facts, oral testimony, *236 and exhibits. The stipulation, included herein by reference, is adopted as a part of our findings of fact, but only such portions thereof as are deemed necessary to the disposition of this proceeding are set forth in our findings of fact. Findings of Fact The petitioner, William S. Gray & Company, is a corporation organized under the laws of New York in December 1904, with its principal office at 342 Madison Avenue, New York, New York. It filed a timely excess profits tax return for the calendar year 1941 on an accrual basis with the collector of internal revenue for the third district of New York. The excess profits tax disclosed by the return in the amount of $77,350.04 was paid before the statutory due dates. Prior to March 15, 1945, and within three years from the time the return was filed, both petitioner and respondent executed an agreement on Form 872 extending the period of limitation on assessment of 1941 income and excess profits taxes to June 30, 1946. The 1941 excess profits tax in the amount of $77,350.04 was paid during the three years immediately preceding the execution of such agreement. Prior to June 30, 1946, both petitioner and respondent executed another *237 agreement on Form 872 further extending the period of limitation on assessment of 1941 income and excess profits taxes to June 30, 1947. On December 18, 1946, petitioner filed a claim for refund of 1941 excess profits tax in the amount of $77,350.04, on the ground that its equity invested capital should include good will in the amount of $770,000 rather than $250,000 as shown on the return. Petitioner claimed an unused excess profits credit carry-over from 1940 and unused excess profits credit carry-backs from 1942 and 1943. With regard to that carry-over and those carry-backs it is stipulated that they shall be computed under Rule 50 consistent with the amount of good will, if any, determined in this proceeding. On June 16, 1947, respondent mailed to the petitioner a notice of deficiency for the year 1941 in the amount of $11,022.64, eliminating from petitioner's equity invested capital the amount of $250,000 claimed in the return as good will. Petitioner's invested capital shown by its return was $1,196,443.51. Respondent computed petitioner's invested capital at $966,742.77, after eliminating the $250,000 claimed as good will and recomputing in conjunction therewith the reduction *238 on account of inadmissible assets. The petition herein was filed August 11, 1947. Petitioner is the successor to the business which was founded by William S. Gray (hereinafter sometimes referred to as Gray) in 1880 and carried on by him as a sole proprietorship until the organization of petitioner in 1904. The business of petitioner and the predecessor proprietorship (hereinafter sometimes referred to as the proprietorship) was a commission business in chemicals, principally acetate of lime and wood alcohol in which the petitioner and the proprietorship acted as selling agent for manufacturers receiving commissions therefor. Neither petitioner nor the proprietorship did any manufacturing. Both products were derived from the distillation of wood, although wood alcohol, unlike acetate of lime, had to be further refined. Approximately 75 per cent of all acetate of lime manufactured in the United States and either sold in the domestic trade or exported was handled by the proprietorship prior to its incorporation. It was the exclusive selling agent for Wood Products Company, one of the largest manufacturers of wood alcohol in the country. Written agency contracts on an annual basis were *239 executed in the fall of each year between the manufacturers of acetate of lime and of wood alcohol and the proprietorship. Gray was a very forceful man in the industry and had personal contact with every manufacturer every year making all the contracts with them. The retention of the business represented by these contracts was partly attributable to the personal relationship between the manufacturers and Gray and Crawford, one of the proprietorship's employees. The proprietorship had a very good reputation in the trade. The relationship between the proprietorship and the manufacturers was very cooperative. The manufacturers shipped to the proprietorship which then sold the products at a commission of two per cent on acetate of lime and two and one-half per cent to five per cent on wood alcohol. The proprietorship guaranteed the accounts of the customers to whom it sold. Prior to incorporation of petitioner the key employees of the proprietorship were James J. Crawford and Ezra J. Wright. From about 1895 Gray permitted the latter two to participate with him in the profits of the proprietorship by paying them a low fixed salary and then giving them as additional compensation a bonus *240 from the profits. Petitioner was incorporated on December 29, 1904, with an authorized capital stock of 2,500 shares of par value of $100 each. On December 31, 1904, at the first meeting of the incorporators, the five incorporators, William S. Gray, Ezra J. Wright, James J. Crawford, Edmund L. Mooney, and W. Paxton Little, paid cash to petitioner for the subscription price of the 25 shares of the capital stock of petitioner ($2,500 par value) to which they had subscribed in the amount of $2,500. Also at that meeting an offer was received from William S. Gray "to sell to this corporation all the assets and property of the business now conducted by him * * * together with all outstanding contracts for purchase and sales, the lease of the premises and good will of the business, for the sum of * * * $247,500 in stock of this company at par and $2,500. - in cash, upon this company assuming and agreeing to pay all outstanding debts obligations and liabilities incurred in said business." Ezra J. Wright, chairman of the meeting, stated: "that he was familiar with the value of the assets of the said business and that in his opinion the same were of the value at which they were offered *241 to this company." James J. Crawford, secretary of the meeting, stated: "that he was familiar with the business above referred to and that in his opinion the property was of the value at which it was offered to the company and was necessary for the transaction of the business of the company." After these statements the offer of Gray was duly accepted by proper resolution. The transactions provided for at the first meeting were completed as of December 31, 1904; 25 shares of stock being issued at par to the five incorporators for $2,500 cash and the remaining 2,475 shares being issued to Gray in exchange for the assets of the proprietorship as specified in the offer and acceptance. When petitioner's books were opened on December 31, 1904, no amount was entered for good will, but the accounts representing the assets and liabilities of the proprietorship were transferred to petitioner's books at the amounts shown by the books of the proprietorship which reflected no amount as good will. The assets of the proprietorship transferred by Gray to petitioner consisted largely of cash, inventories, (apparently products shipped to the proprietorship by manufacturers and on hand until shipment *242 by the proprietorship to parties to which it sold such products) and some investments in bonds made through use of "idle money". At a meeting of petitioner's board of directors on January 22, 1906, the following resolutions were adopted: "Resolved - That salaries for extra services rendered shall be paid from the profits of 1905 as follows: Wm. S. Gray, $105,083.24, E. J. Wright $16,194.42 and James J. Crawford $8,098.41 "Resolved - That the salaries for 1906 are arranged as follows William S. Gray $12,000.00 per annum Ezra J. Wright $5,200.00 per annum James J. Crawford $2,600.00 per annum" The foregoing amounts stated to be for "extra services" were in reality compensation for ordinary services and were paid to the named persons from the profits of 1905 after deducting a six per cent dividend of $15,000 on the outstanding capital stock. 1905 was a very prosperous year. The only available records of the proprietorship at the time of the hearing herein consisted of two accounts on a general ledger, one of the accounts being entitled "Profit and Loss", and the other being entitled "Wm. S. Gray (Business A/C)"; and each embracing the years 1886 to 1891, inclusive. *243 Opinion Petitioner contests respondent's eliminating from petitioner's equity invested capital the sum of $250,000 claimed as good will on its 1941 excess profits tax return, and now contends that its good will should properly be valued at $770,000, and has filed a claim for refund based on such valuation. The sole question involved is: What was the fair market value of the good will of the proprietorship on December 31, 1904, when all of its assets were transferred to petitioner. If the good will then had a fair market value such value was includible in petitioner's equity invested capital under section 718, I.R.C.
The petitioner contends that the value of the good will of the proprietorship on December 31, 1904, when it transferred all its assets, including good will, to the petitioner, was not less than $770,000, or if not in such amount then in a substantial amount to be determined by this Court under the principle announced in Cohan v. Commissioner, 39 Fed. (2d) 540. The respondent contends that the good will of the proprietorship in 1904 had only a nominal value, if any. At the outset it should be noted that the offer of sale of the *244 proprietorship as accepted by petitioner specifically included good will among the assets to be sold to petitioner for $250,000 ($247,500 par value of stock and $2,500 cash). If the tangible assets had a value of $250,000, as the parties apparently agree that they had, then the good will acquired by petitioner could have possessed only nominal value and confirmation of this premise appears in petitioner's failure to set up an account for good will when it opened its corporate books. In the absence of other comparably good evidence of the fair market value of good will, the price agreed upon by buyer and seller at the date of acquisition will be accepted. Cf. McKinney Manufacturing Co., 10 T.C. 135. We now turn to the other evidence to see if a different result is warranted. In support of its contention petitioner takes the primary positions: (1) That the only available books of account of the proprietorship establish the earnings of the proprietorship and the amounts of its tangible assets invested in the business in each of the years 1887 to 1891, inclusive; (2) that by applying the formula in A.R.M. 34, 2 C.B. 31, and using a rate of eight per cent return *245 on tangibles and capitalizing the remaining earnings at 15 per cent, the good will of the proprietorship is shown to have had a value of approximately $225,000 in 1891; (3) that the business of the proprietorship increased very materially during the period from 1893 to 1904; and (4) that a fair market value of $770,000, or otherwise a substantial value on December 31, 1904, is established for the good will of the proprietorship by the factors in (1), (2), and (3) above. Do the available books of account of the proprietorship for the years 1887 to 1891, inclusive, and the supporting testimony disclose sufficient facts which, through application thereto of the formula in A.R.M. 34, invoked by petitioner, establish the value of the proprietorship's good will to be approximately $225,000 in 1891, as petitioner takes the position in (1) and (2) above that they do? We think not. The only accounts from the books of the proprietorship in evidence are from an "old ledger", one of the accounts being entitled "Profit and Loss", and the other being entitled "Wm S. Gray (Business A/C)", and each account covering the years 1886 to 1891, inclusive. The only explanation with regard to either account *246 was the testimony of one witness that certain entries on both accounts were in red, although appearing as black on the photostatic copy introduced in evidence, and the testimony of another witness, the hereinabove mentioned Crawford, who had been in the employ of the proprietorship from 1893 to 1904, part of the time as assistant bookkeeper and part of the time as bookkeeper, and thereafter in the employ of petitioner as office manager from 1904 until his retirement in 1928. The latter witness testified with respect to the "Wm S. Gray (Business A/C)", that he did not keep the account but that it looked like a business account representing Gray's investment. As to both these accounts there is a complete lack of testimony as to the method of accounting used, the nature of the various entries, including entries listed merely as "sundries", and as to the character and purpose of numerous entries in red. The petitioner in reaching its conclusion that the value of the good will of the proprietorship as of 1891 was approximately $225,000, claims as one factor that the "Profit and Loss" account does not disclose the profits of the proprietorship for 1889, but that it does disclose the profits *247 for other years as follows: Year
Amount
1887
$22,910.92
1888
30,006.40
1890
32,812.03
1891
37,304.40 We do not so analyze that account, but can say only that the account seems to indicate the following profits and losses: Year
Amount
1886
$22,910.92 Profit
1887
30,006.40 Profit
1888
(770.14) Loss
1889
(498.10) Loss
1890
32,812.03 Profit
We are unable to make a finding of those amounts as either profits or losses because of the lack of testimony in the above-mentioned particulars and also because of a failure of proof as to how such purported amounts of profit and loss for each year were arrived at. The unexplained "Wm S. Gray (Business A/C)" claimed by petitioner as another factor in reaching its conclusion that the value of the good will of the proprietorship was approximately $225,000 as of 1891 is wholly unacceptable as indicating what amounts may have constituted Gray's investment in, or the tangible assets of, the proprietorship in the various years embraced in that account. From a consideration of all the facts and circumstances, it is our opinion that the fragmentary accounts of the proprietorship in evidence fail to *248 show as facts either what the average net earnings of the proprietorship were or what its tangible assets were during the period 1887 to 1891, inclusive, or the period 1886 to 1890, inclusive, and, consequently, that there are insufficient basic facts to which the formula in A.R.M. 34 may be applied. Accordingly, we hold that petitioner has failed to establish the value of the good will of the proprietorship as of 1891 to be $225,000, or any other amount. Moreover, assuming, but not deciding, that the profits of the proprietorship from 1887 to 1891 are shown by the books of account to be in the amounts claimed by petitioner or in the different indicated amounts shown in the fourth preceding paragraph, it is still not shown, and the burden is on the petitioner to so show, that these profits were after allowances for each year of reasonable compensation to William S. Gray, the sole owner of the proprietorship; and this is necessary in order to arrive at a correct basis for estimating average profits in order to apply the formula in A.R.M. 34. Sanderson v. Commissioner, 42 Fed. (2d) 160, affirming 16 B.T.A. 1022; Edwin Schiele Distilling Co., 3 B.T.A. 873; *249 Robert Thal, 3 B.T.A. 1229. Furthermore, it may be said that if the value of the good will of the proprietorship in 1891 was approximately $225,000 that fact in itself would not tend to prove the value of the good will in 1904 unless the factors upon which that fact was predicated related to years not so remote from 1904. The petitioner apparently has attempted to so relate those factors to a period of years immediately preceding 1904 by the testimony of the witness, James J. Crawford; that the business of the proprietorship increased "very materially" between 1893 and 1904. But such testimony falls far short of establishing that the factors as to earnings and value of tangible assets existing in years immediately preceding 1891 also existed in years immediately preceding 1904. We hold that as to petitioner's positions (1), (2), and (3) petitioner has failed to establish that the good will of the proprietorship when it transferred its assets to petitioner on December 31, 1904 had a value of $770,000, or any other amount. In further support of its contention as to the value of the proprietorship's good will on December 31, 1904, petitioner argues: That its profits *250 for 1905 were $161,970.20, arrived at by taking Crawford's compensation of $8,098.41 from the profits of 1905 shown by the resolution of January 22, 1906 as representing five per cent of the profits for that year; that the profits of the proprietorship for each of the years immediately preceding 1905 were approximately the same as those of petitioner for 1905; and that by applying the formula in A.R.M. 34, its contention as to the value of the good will of the proprietorship on December 31, 1904 is correct. In other words, petitioner seeks to estimate earnings for a year later than the proper valuation date and project them back as the probable earnings for each of several years immediately preceding the proper valuation date. In so doing and in applying, as it does, the formula in A.R.M. 34, it necessarily assumes a fact not shown by the record, i.e., that the $250,000 valuation of the tangible assets on December 31, 1904 of the proprietorship is likewise the valuation of such assets in each of the several years immediately preceding the proper valuation date. While Crawford testified at the hearing that the $8,098.41 represented a percentage of the profits of 1905 which petitioner *251 had agreed to, and did, pay him and that he thought that percentage was five per cent, he testified in 1925, (when his memory obviously was fresher than in 1948, the year of the hearing herein), by deposition taken in a former suit and admitted in evidence in the instant proceeding without objection, that the percentage of profits he received from petitioner had been ten per cent from the organization of petitioner until 1909. So, we think that petitioner's estimate of approximately $160,000 for its profits for 1905, based upon Crawford's compensation of $8,098.41 representing five per cent of its profits for 1905, is for these reasons obviously incorrect. It also obviously is incorrect as shown on the face of the resolution itself, since even if the profits approximated $160,000 it would be necessary, in order to arrive at the net profits of the character with which we are concerned, to deduct the total amount of $129,376.07 received by the three parties named in the resolution as compensation for their services. With reference to the profits of the proprietorship being for several years preceding the proper valuation date approximately the same as the profits of the petitioner *252 for 1905, the following testimony of Crawford is the only evidence in the record: "Q. * * * using the Minute as shown on page 19 of the Minute Book, [shown in our findings] which shows that the profits for the year 1905 were not less than $145,000.00, what would you estimate was the profits of the proprietorship immediately prior to the incorporation of the corporation? "A. I can't answer that without having the books. I know that we were doing a very good business. "Q. Would you say that the profits of the years immediately preceding 1905 were anywhere near the profits that were earned in the year 1905, the first year of the corporation? "A. I would say so." In view of Crawford's conflicting testimony as to the percentage of profits represented by the $8,098.41, and in view of his indefinite testimony as to the profit of the proprietorship in the years immediately preceding 1905, we do not think the record presents the facts necessary to sustain petitioner in its contention that the profits of the petitioner for 1905 were $161,970.20 and that the earnings of the proprietorship for several years immediately preceding January 31, 1904 were approximately the same as those *253 of petitioner in 1905; and for this reason as well as the further reason that the value of the tangible assets of the proprietorship for those immediately preceding years is not shown, but is assumed in petitioner's computation to be $250,000, (the same as the value of such tangible assets on December 31, 1904), we cannot agree with petitioner's argument in further support of its contention as to the value of the proprietorship's good will on December 31, 1904. Also, it may be further said that it is not shown that in arriving at the estimated net earnings of the proprietorship for the years immediately preceding 1905 any reasonable compensation for William S. Gray in those years was taken into consideration by petitioner. We do not glean from this record sufficient facts to justify a conclusion that the determination of the respondent that the good will of the proprietorship had no value when all its assets were transferred to petitioner is erroneous, and, consequently, that determination is approved. This being true, the principle of the Cohan case, supra, has no application. Petitioner also relies upon the testimony of a witness it presented as an expert and who testified that *254 in his opinion the value of the good will of the proprietorship at the valuation date was about $700,000. Without regard to whether or not the witness qualified as an expert we accord no weight to his opinion which was based, in material part, upon facts not shown in the record. Decision will be entered for the respondent.